Bruce L. ERICKSON, M.D., and Great Falls Eye Surgery Center, Plaintiffs–Appellees,

v.

UNITED STATES of America, ex rel., DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendants–Appellants.

No. 94–36067.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1995.

Decided Oct. 5, 1995.

John F. Daly and Paul D. Scott, United States Department of Justice, Washington, D.C., for defendants-appellants.

John C. Doubek, Small, Hatch, Doubek & Pyfer, Helena, Montana, for plaintiffs-appellees.

Before: WRIGHT, BEEZER and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

We consider here the statutory duty of an officer of the United States to enforce the will of Congress when a Medicare provider is convicted of program fraud. The Secretary of Health and Human Services (the "Secretary") appeals the district court's grant of a permanent injunction to Dr. Bruce Erickson and his ophthalmological clinic, the Great Falls Eye Surgery Center (collectively, "plaintiffs"). The injunction prohibits the Secretary from excluding plaintiffs from federally-funded health care programs pursuant to 42 U.S.C. § 1320a–7(a)(1) until this court rules on plaintiffs' appeal of their criminal convictions for submitting false claims to Medicare in violation of 18 U.S.C. § 287. The district court concluded that allowing the Secretary to exclude plaintiffs before their criminal appeal was resolved would violate their due process rights.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Following oral argument, we issued an Order of Partial Remand instructing that the permanent injunction be immediately dissolved. We indicated at that time that our disposition of the appeal would follow. For the reasons set forth below, we reverse the district court's grant of a permanent injunction.

## I.

A federal jury in Montana convicted plaintiffs in March 1994 of knowingly and willingly filing false, fictitious or fraudulent claims with the Department of Health and Human Services for Medicare payment in violation of 18 U.S.C. § 287. Specifically, plaintiffs were convicted of knowingly submitting claims to Medicare for anesthesiological services, allegedly rendered by a nurse anesthetist, that in fact had not been performed.

Following the convictions, the Secretary notified plaintiffs that, pursuant to 42 U.S.C. § 1320a–7(a), they were to be excluded for fifteen years from participating in Medicare, Medicaid, and certain specified federally funded state health care programs. Section 1320–7(a)(1) provides that the Secretary "shall exclude" from participating in such programs "[a]ny individual or entity that has been convicted of a criminal offense related to the delivery of an item or service" under Medicare, Medicaid, or any state health care program.

The notices to plaintiffs informed them that, within 60 days of notification, they could request a hearing before an administrative law judge in which they could challenge whether they were in fact convicted, whether their convictions were related to the delivery of an item or service, and the length of their exclusion from the program.

Rather than request an administrative hearing, plaintiffs filed a separate action in the United States District Court in Montana, seeking a temporary restraining order and a permanent injunction to prevent the Secretary from excluding them. In their petition for the TRO and permanent injunction, plaintiffs argued that they could not be excluded under § 1320a–7(a)(1) because their convictions were not "related to the delivery of an item or service" under Medicare and that, in any event, exclusion would constitute a double jeopardy violation.

The district court granted an *ex parte* TRO and, in August 1994, entered a permanent injunction prohibiting the Secretary from excluding the plaintiffs from any programs until the final disposition of the appeal of their criminal convictions. The district court concluded that plaintiffs had not exhausted administrative remedies with respect to their claim that they were not convicted of a "criminal offense related to the delivery of an item or service" under Medicare (and, thus, the court could not reach that issue), but that exhaustion of their double jeopardy claim was judicially waived. Nevertheless, the court held that plaintiffs' double jeopardy claim was without merit.

The court concluded *sua sponte*, however, that exclusion of the plaintiffs pending their criminal appeal violated due process. It therefore granted a "limited" permanent in-

junction prohibiting the Secretary from excluding the plaintiffs until the disposition of their criminal appeal.

In finding a due process violation, the district court reasoned that the Secretary was obligated under 42 U.S.C. § 1320a–7(a)(1) to exclude the plaintiffs because the only requirements of the statute are that the individual or entity be convicted of a program-related offense. *See Travers v. Sullivan,* 801 F.Supp. 394, 403 (E.D.Wash.1992), *aff'd Travers v. Shalala,* 20 F.3d 993 (9th Cir.1994). Pursuant to 42 U.S.C. § 1320a–7(i), a conviction occurs "when a judgment of conviction has been entered against the individual or entity by a Federal, State, or local court, *regardless of whether there is an appeal pending.*" (Emphasis added.) The district court reasoned that

> [t]he Secretary has no authority to review the constitutional propriety of the conviction upon which the exclusion is predicated. Consequently, a grievous loss may be visited upon the individual excluded without that individual having had the opportunity to challenge the validity of his criminal conviction through the exercise of his fundamental right to a direct appeal.

The court therefore concluded that due process required it to enjoin the Secretary from excluding the plaintiffs until the resolution of their criminal appeal.

## II.

■ We review de novo whether the district court possessed the power to issue an injunction and review for abuse of discretion the district court's exercise of that power. *Continental Airlines, Inc. v. Intra Brokers, Inc.,* 24 F.3d 1099, 1102 (9th Cir.1994).

*Due Process*

■ The Secretary argues that the district court erred in relying on the Due Process Clause of the Fifth Amendment as the basis for the permanent injunction because the plaintiffs cannot prove the *sine qua non* of a due process claim: a property or liberty interest. As the Supreme Court held in *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), and as this court has repeatedly emphasized, "[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake." *Schroeder v. McDonald,* 55 F.3d 454, 462 (9th Cir.1995).

The district court did not address whether plaintiffs possessed a liberty or property interest in continued participation in Medicare and related programs, although it noted that exclusion during the pendency of plaintiffs' criminal appeal "would irreparably damage their practice and business."

■ This circuit has not ruled on the issue of whether a medical provider has a protected interest in continued participation in Medicare, Medicaid or similar programs. The issue was present in *Cassim v. Bowen,* 824 F.2d 791 (9th Cir.1987), but, because the Secretary did not challenge the plaintiff's assertion that he had a property interest in continued participation in Medicare and a liberty interest in prohibiting the government from publishing notice of his exclusion, the court was not required to reach the question. Rather, it assumed "arguendo" that the plaintiff had implicated either a property or liberty interest. *Id.* at 796. In this case, however, the question is squarely before us.[1]

---

1. The issue reaches the court in the following manner: A federal court has jurisdiction to consider a sanction imposed under 42 U.S.C. § 1320a–7 only after the Secretary has issued a "final decision" on the proposed sanction. *See* 42 U.S.C. § 1320a–7(f). As we held in *Winter v. California Medical Review, Inc.,* 900 F.2d 1322 (9th Cir.1989), the "final decision" condition consists of two elements: (1) a non-waivable requirement that "a claim for benefits shall have been presented to the Secretary," and (2) a waivable requirement "that the administrative remedies prescribed by the Secretary be exhausted." *Id.* at 1325 (citations omitted). The exhaustion requirement may be "waived" by either the Secretary or by the court. *See id.* at 1326. Here, the Secretary did not waive exhaustion and, as noted above, plaintiffs failed to actually exhaust their administrative remedies. Thus, the district court had jurisdiction to consider plaintiffs' claim only through a judicial waiver, which requires that the claim be

> (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal of the relief sought will cause an injury which retroactive payments cannot remedy (irreparability), and (3) one whose res-

*Property Interest*

■ The Secretary argues that plaintiffs have no property interest in continued participation in Medicare, Medicaid or other related programs. As the Supreme Court noted in *Roth,* to have a property interest in a benefit, a person must have "a legitimate claim of entitlement to it." 408 U.S. at 577, 92 S.Ct. at 2709. "Entitlements are created by 'rules or understandings' from independent sources, such as statutes, regulations, and ordinances, or express or implied contracts." *Orloff v. Cleland,* 708 F.2d 372, 377 (9th Cir.1983) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). As the Secretary argues, however, plaintiffs can show no entitlement to continued participation in the programs.

Presented with this precise issue in *Koerpel v. Heckler,* 797 F.2d 858, 863–65 (10th Cir.1986), the Tenth Circuit held that a physician had no property interest in his eligibility for Medicare reimbursement. *Heckler* notes that the physician was not the intended beneficiary of the Medicare program and that, although he stood to suffer financial losses because of his exclusion from Medicare, such losses were "not of constitutional significance for the establishment of a protectable property interest." *Id.* at 864.

Similarly, in *Cervoni v. Sec'y of Health, Ed. and Welfare,* 581 F.2d 1010 (1st Cir. 1978), the First Circuit concluded that Medicare is nothing more than a governmental insurance program for the elderly. "As such the real parties in interest are the beneficiaries; physicians are parties in interest only as assignees of the beneficiaries." *Id.* at 1018. Accordingly, the plaintiff physician had no protectable property interest in his participation in Medicare. *Id.* at 1019.

Plaintiffs offer no argument to support the position that they do possess a property interest other than to cite *Ram v. Heckler,* 792 F.2d 444, 447 (4th Cir.1986), in which the Fourth Circuit noted, without discussion, that the plaintiff doctor's "expectation of continued participation in the medicare program is

a property interest protected by the Due Process Clause of the Fifth Amendment." The court in *Ram* cited *Bowens v. North Carolina Dept. of Human Resources,* 710 F.2d 1015, 1018 (4th Cir.1983), for this conclusion. *Bowens,* however, concerned a dentist's participation in North Carolina's Medicaid program and the interpretation of state administrative regulations concerning peer review. After reviewing the procedural and substantive guarantees set forth in the state regulations, the court concluded that the only plausible inference that could be drawn from them was that a provider's participation in the state program was not terminable at will. Accordingly, the court held that "the regulations create[d] a property interest in continued participation in the program unless terminated for cause." *Id.* at 1018.

We do not find *Ram* to be persuasive authority for plaintiffs' position. In contrast, the First and Tenth Circuits have provided reasoned analyses for their conclusion that physicians do not have a property interest in continued participation in Medicare. We choose to follow the reasoning of those circuits and hold that plaintiffs do not possess a property interest in continued participation in Medicare, Medicaid, or the federally-funded state health care programs.

*Liberty Interest*

■ A person's liberty interest is implicated if a charge impairs his reputation for honesty or morality. *See Vanelli v. Reynolds School Dist. No. 7,* 667 F.2d 773, 777 (9th Cir.1982); *see also Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. "The procedural protections of due process apply if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment or the alteration of some right or status recognized by [ ] law." *Vanelli,* 667 F.2d at 777–78; *see Orloff,* 708 F.2d at 378.

The Secretary argues that plaintiffs have no protectable liberty interest at stake because, although she is required to publicize

olution would not serve the purposes of exhaustion (futility).
*Id.* (citations omitted). The district court found that the due process claim, which it raised *sua sponte,* satisfied these requirements and therefore

allowed it to address the merits of the constitutional claim. The Secretary does not challenge the district court's judicial waiver on appeal. Rather, it concedes waiver and addresses the substance of the due process claim.

her exclusion of plaintiffs, the exclusion decision does not contain any false allegations. That is, she argues that "[p]laintiff's criminal convictions, though on appeal, are indisputable." This argument, however, is not directly on point. To implicate a liberty interest, the accuracy of the charge must be contested. Here, the charge is that plaintiffs were convicted of a criminal offense "related to the delivery of an item or service" under Medicare. Although plaintiffs were in fact convicted of a crime, they contest whether those convictions were related to the delivery of an item or service under Medicare. They argued in their Petition for Temporary Restraining Order and Permanent Injunction that the convictions actually resulted from the billing practices of a third party nurse anesthetist. Although the district court did not have jurisdiction to reach the merits of this argument, the fact that plaintiffs attempted to challenge the validity of the convictions in this case (and presumably in their pending criminal appeal) suggests that the accuracy of the charge in the exclusion is in fact contested.

Under *Vanelli*, then, plaintiffs would have a protectable liberty interest if their exclusion is made in connection with the "alteration of some right or status recognized by [ ] law." *See* 667 F.2d at 778. In that regard, the proposed exclusion is made in connection with the plaintiffs' "status" as participating health care providers under Medicare. Thus, contrary to the Secretary's assertions, we conclude that plaintiffs have a protectable liberty interest at stake.

The next question, then, is whether plaintiffs received all the process they were due. "To determine what process is due, we must balance the risk of an erroneous deprivation, the [government's] interest in providing specific procedures and the strength of the individual's interest." *Cassim*, 824 F.2d at 797 (quoting *United States v. Crozier*, 777 F.2d 1376, 1383 (9th Cir.1985)).

In this case, the risk of an erroneous deprivation is remote. Plaintiffs were convicted by a jury of submitting false claims to Medicare. In *Ram*, the Fourth Circuit noted that a physician who had been convicted of Medicare fraud had been afforded "ample process to assert his innocence" by his criminal trial. 792 F.2d at 447. This court's holding in *Travers v. Shalala*, 20 F.3d at 993, is also relevant. In *Travers*, we held that, because 42 U.S.C. § 1320a–7(a)(1) mandates exclusion once a conviction occurs, "a plenary, adversary administrative proceeding involving evidence, cross-examination of witnesses, etc., [was] not necessary" before excluding a physician "convicted" of Medicare fraud. *Id.* at 998 (quoting *United States v. Consolidated Mines and Smelting Co., Ltd.*, 455 F.2d 432, 453 (9th Cir.1971)).

The second element of the due process balancing test—the government's interest—also weighs heavily against the plaintiffs. As this Court noted in *Cassim*, the government has a "compelling" interest in preventing, among other things, the waste of public resources caused by improper acts by physicians under Medicare. 824 F.2d at 797. "Requiring full-blown predeprivation hearings would frustrate Congress' intent and impede the Secretary's ability to act quickly. It would also impose significant administrative costs." *Id.* (footnote omitted).

In contrast, the third element of the balancing test—the plaintiffs' interests—weighs against the Secretary. Undoubtedly, plaintiffs have a substantial interest in preventing their exclusion from the program and, moreover, having that exclusion publicized.

Nevertheless, applying the balancing test set out in *Cassim*, we conclude that, although plaintiffs have a protectable liberty interest at stake, they have received adequate due process. Thus, unless we conclude that the district court erred in its analysis of the double jeopardy and statutory claims, we must reverse the district court's grant of a permanent injunction.

### III.

*Double Jeopardy*

The Secretary argues that, if the district court erred at all in its double jeopardy analysis, it erred in *plaintiffs'* favor. That is, the district court concluded that the judicial waiver theory granted it jurisdiction to consider plaintiffs' double jeopardy argument,

but then concluded that the double jeopardy argument was substantively meritless. The Secretary argues, however, that the judicial waiver theory in fact does not apply to the double jeopardy argument. As discussed *supra* in footnote 1, judicial waiver of a nonexhausted claim exists when the claim is (1) collateral to a substantive claim of entitlement, (2) colorable in its showing that refusal of the relief sought will cause an injury which retroactive payments cannot remedy, and (3) one whose resolution would not serve the purposes of exhaustion. *See Winter v. California Medical Review, Inc.*, 900 F.2d at 1326.

■ We conclude that the double jeopardy argument actually is not collateral to the plaintiffs' claim that they cannot be excluded from participating in Medicare because it involves the core issue of whether they may be excluded at all, not the collateral issue of whether they were afforded appropriate due process in the Secretary's act of excluding them. As such, the double jeopardy issue is not subject to judicial waiver and the district court therefore did not have jurisdiction to address the merits of the issue.[2]

### *Plaintiffs' Statutory Claim*

■ The district court properly concluded that it had no jurisdiction over plaintiffs' claim that they were not convicted of a crime "related to the delivery of an item or service" under Medicare. Plaintiffs failed to exhaust their administrative remedies with regard to this claim, *see* 42 U.S.C. § 1320a–7(f), and the judicial waiver theory did not apply to this argument. Accordingly, the district court correctly refused to reach this issue.

### IV.

We conclude that, although plaintiffs had a protectable liberty interest at stake, they were afforded appropriate due process. Accordingly, we have already directed the district court to dissolve the permanent injunc-

tion, and we now REVERSE the decision of the district court.

---

**2.** We note, however, that even if the double jeopardy issue were subject to judicial waiver, the district court correctly concluded that the issue was meritless. The double jeopardy clause applies only to punitive sanctions. *See United States v. Halper*, 490 U.S. 435, 448–49, 109 S.Ct.

1892, 1901–02, 104 L.Ed.2d 487 (1989). As the Eleventh Circuit held in *Manocchio v. Kusserow*, 961 F.2d 1539, 1543 (11th Cir.1992), the mandatory exclusion provision of 42 U.S.C. § 1320a–7 is not punitive, but rather remedial in nature and purpose.