ST. ELIZABETH'S MEDICAL CENTER OF BOSTON, INC., Plaintiff,

v.

Donna SHALALA, in her official capacity as Secretary of the United States Department of Health and Human Services, Defendant.

No. Civ.A. 98–12621–JLT.

United States District Court, D. Massachusetts.

March 31, 2000.

**420**

Andrew C. Griesinger, Mark A. Borreliz, Choate, Hall & Stewart, Boston, MA, for St. Elizabeth's Medical Center of Boston, Inc., plaintiff.

Thomas E. Kanwit, United States Attorney's Office, Boston, MA, for Donna E. Shalala, defendant.

### MEMORANDUM

TAURO, District Judge.

Plaintiff brings this suit for declaratory judgment challenging as "arbitrary and capricious" the Health Care Financing Administration's determination denying its request for a new provider exemption to the cost limit regulations under Medicare. Defendant moves to dismiss Plaintiff's suit pursuant to Fed.R.Civ.P. 12(b)(6) on grounds that Plaintiff has failed to exhaust its administrative remedies. For reasons set forth below, the motion is ALLOWED.

### I.

Plaintiff, St. Elizabeth's Medical Center of Boston, Inc., is a charitable Massachusetts corporation, and owner of a Medicare-certified skilled nursing facility ("SNF"). Defendant, Donna Shalala ("the Secretary"), is the Secretary of the United States Department of Health and Human Services ("HHS").

Part A of Medicare, 42 U.S.C. § 1395c, provides for the payment of in-patient hospital and related post-hospital benefits on behalf of eligible individuals. The Health Care Financing Administration ("HCFA"), on behalf of the Secretary, is responsible for determining the amount of Medicare payments due a "provider of [medical] services" for services furnished to program beneficiaries. 42 U.S.C. § 1395g. At times relevant to this case, the Medicare program reimbursed SNF services on a "reasonable cost" basis.

The Medicare statute authorizes HCFA to promulgate regulations setting forth the "methods" to be used in computing "reasonable costs," and to establish appropriate cost limits. 42 U.S.C. § 1395x(v)(1)(A). Pursuant to this authority, HCFA has promulgated procedures for establishing upper limits on the provider costs that it will recognize as "reasonable" for Medicare reimbursement purposes. HCFA also has promulgated various "exemptions, exceptions, and adjustments" to the cost limits to accommodate the special needs of particular providers. 42 C.F.R. § 413.30(a)(1), (e)–(h). These regulations allow, among other things, a facility that qualifies as a "new provider" to request a new provider exemption from the cost limits. 42 C.F.R. § 413.30(e).

A provider seeking to obtain a new provider exemption must file a request for the exemption. *See* 42 C.F.R. § 413.30(c). The HCFA determines whether an exemption is appropriate, and the provider may appeal the HCFA's decision to the Provider Reimbursement Review Board ("PRRB") by filing a request for a hearing within 180 days of the denial of its exemption. *See* 42 C.F.R. § 405.1801. The PRRB's decision in the case is final, unless the Administrator of HCFA, within 60 days, reverses, affirms, or modifies the decision. *See* 42 U.S.C. § 1395oo(f)(1). Providers may obtain judicial review of any "final decision" of the PRRB or the Administrator. *See id.*

Massachusetts law provides that a hospital can obtain a license to establish a new SNF only after the Massachusetts Department of Public Health ("DPH") issues a "determination of need" for the facility. Mass.Gen.Laws ch. 111 § 71. In 1994, in

response to a perceived surplus of nursing homes and shortage of SNFs, DPH implemented a policy of granting "determinations of need" to providers seeking to open new SNFs only on condition that the provider first acquire, by contract, the operating rights of an existing "Level III" nursing home, which then would close.[1] In 1996, the Massachusetts legislature adopted this policy as law. *See* 1996 Mass. Acts, ch. 203 § 31.[2]

In 1995, Plaintiff decided to establish a new SNF at its existing location in Boston, Massachusetts. To comply with Massachusetts law, Plaintiff contracted with Friel Nursing Home, Inc. ("Friel"), a 29–bed "Level III" nursing home in Quincy, Massachusetts, to purchase Friel's rights to operate a 29–bed SNF under terms providing that Friel thereafter would cease doing business. In October 1996, DPH issued Plaintiff a "determination of need" pursuant to Mass.Acts, ch. 203 § 31 granting it permission to establish a new "Level II" SNF.

On October 28, 1996, Plaintiff began operating a twenty-six bed SNF unit. In January 1997, Plaintiff filed a request for a new provider exemption for its SNF unit under Medicare. In June 1997, the HCFA determined that Plaintiff was ineligible for the new provider exemption. Plaintiff then requested a hearing before the PRRB and, in March 1998, the PRRB notified Plaintiff that a hearing on the request would be held sometime in April 2000. On December 29, 1998, prior to any PRRB hearing or "final" decision, Plaintiff filed suit in this court seeking a declaratory judgment that the HCFA's decision to deny its requested exemption was "arbitrary and capricious."

## II.

Section 1395oo(f)(1) of Medicare limits judicial review of a Medicare reimbursement dispute to "any final decision of the [PRRB] . . . or any reversal, affirmance, or modification [of a final PRRB decision] by the Secretary." 42 U.S.C. § 1395oo(f)(1). Section 1395oo(f)(1) thus "elevate[s] the ordinary administrative 'common law' principle of exhaustion into a statutory requirement." *Doyle v. Secretary of Health and Human Serv.*, 848 F.2d 296, 299 (1st Cir.1988). Plaintiff admits that it has yet to obtain a "final decision" of the PRRB or Secretary.[3] Under the general rule of section 1395oo(f)(1), then, Plaintiff's suit in this court is barred as premature.

Plaintiff argues, however, that section 1395oo(f)(1) does not bar its suit in this court because an exercise of exhaustion in this case would be "futile." Plaintiff contends that its suit challenges an "entrenched, systemwide agency policy" established by the Secretary of "depriving new SNFs from receiving the benefit of the new provider exemption," and that the Secretary has taken the "firm stand" that the establishment of a SNF unit under a statutory scheme like the Massachusetts scheme—where the provider first must contract with an existing Level II facility for its operating rights—affects a mere change of ownership rather than the cre-

---

1. Massachusetts law recognizes various licensure levels of long-term health care facilities, including "Level II" SNFs and "Level III" nursing homes. *See* 1996 Mass.Acts, ch. 203 § 31. While Level III facilities are authorized to provide services "for patients whose condition is stabilized to the point that they need only supportive nursing care, supervision and observation," Level II facilities are licensed to provide more sophisticated services, i.e., services involving "skilled nursing care and meaningful availability of restorative services and other therapeutic services...." 105 C.M.R. § 151.020.

2. Under the current law, a provider seeking to establish a SNF does not actually acquire the operating rights from another facility; instead, the provider arranges for the other facility to close and then becomes eligible to obtain a "determination of need" and license from the DPH. *See* Mass.Acts, ch. 203 § 31.

3. A hearing before the PRRB is scheduled for sometime in April 2000.

ation of a "new" SNF for exemption purposes.

■ The First Circuit has recognized a "narrow" exception to section 1395oo(f)(1) whereby exhaustion is excepted in a suit concerning an " 'entirely collateral' matter where the agency has deprived an individual of something important and 'full relief cannot be obtained' later from the agency." *See Doyle*, 848 F.2d at 299. The "futility" exception, however, is inapplicable to Plaintiff's case. Plaintiff's pending appeal before the PRRB is not rendered "futile" simply because it is more than likely that the PRRB will affirm the HCFA's decision denying Plaintiff's request for a new provider exemption. *See Health Equity Resources, Urbana, Inc. v. Sullivan*, 927 F.2d 963, 966 (7th Cir.1991) ("The challenge may, probably will, fail, but that does not make it futile; most appeals fail."). *See also Thetford Properties IV Ltd. Partnership v. U.S. Dept. of Housing & Urban Development*, 907 F.2d 445, 450 (4th Cir. 1990). Nor is futility established where, as asserted here, the Secretary is more than likely to reverse any PRRB decision in Plaintiff's favor.

Even assuming Plaintiff could establish that its appeal before the PRRB is "futile," moreover, Plaintiff's suit nevertheless neither involves an "entirely collateral" matter, nor is "full relief" unobtainable later from the agency. Plaintiff's suit challenges the HCFA's decision to deny its request for a new provider exemption as "arbitrary and capricious;" Plaintiff does not claim, for instance, that the procedures HCFA followed in denying its exemption request were unconstitutional. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 326–32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In addition, Plaintiff would be entitled to retrospective Medicare reimbursements if the PRRB, the Secretary, or ultimately the court reverses the HCFA's decision.

Plaintiff asserts that it need not satisfy the "entirely collateral" matter or "irreparable harm" components of the "futility" exception standard, arguing that the First Circuit has not adopted a "hard and fast rule" on exhaustion, that courts generally recognize a need for "flexibility" in determining whether exhaustion should be required, and that 42 U.S.C. § 1395oo(f)(1) demands that the Secretary "waive" exhaustion where the plaintiff challenges a "systemwide" agency policy, or where the Secretary has taken a "firm stand" on an issue. A fair reading of the First Circuit's decision in *Doyle*, however, suggests otherwise. 848 F.2d at 299–301. In *Doyle*, the First Circuit identified the three elements to the "futility" exception connected by the conjunction "and," not "or." *Id.* at 299. The court's application of the standard in that case, moreover, suggests that the "entirely collateral" matter and "irreparable harm" prongs are more than perfunctory. *See id.* at 300–01. Other circuits also have adopted this rigid approach to 42 U.S.C. § 1395oo(f)(1). *See Clarinda Home Health v. Shalala*, 100 F.3d 526, 530–31 (8th Cir.1996); *Erickson v. United States*, 67 F.3d 858, 861 n. 1 (9th Cir.1995).

■ Plaintiff also argues that, because the Secretary assertedly has taken a "firm stand," requiring exhaustion would serve no purpose, as HHS's policy already is well established and unlikely to change, and HHS's expertise is unlikely to aid the court. The exhaustion requirement, however, serves many purposes. Exhaustion avoids premature judicial interference with the administrative process by vesting in the agency power and opportunity to correct its own errors. *See Bowen v. City of New York*, 476 U.S. 467, 484, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). Exhaustion further encourages the compilation of a detailed factual record. *See id.* Applying the "futility" exception to every instance where the "final decision" of the agency is more than likely to match its initial decision would undermine these policies that the exhaustion requirement is intended to advance.

### III.

For the foregoing reasons, the court concludes that Plaintiff has failed to com-

ply with the exhaustion requirement of 42 U.S.C. § 1395oo(f)(1) as a prerequisite to bringing suit in this court. Defendant's motion to dismiss accordingly is ALLOWED.

AN ORDER SHALL ISSUE.

### ORDER

Defendant's motion to dismiss is ALLOWED.

IT IS SO ORDERED.