**CLEANMASTER INDUSTRIES, INC.,**
**dba Prescriptions Plus, Plaintiff,**

v.

**SANDRA SHEWRY, Director of the**
**California Department of Health**
**Services, Defendant.**

**No. CV 06–2539 FMC (RZx).**

United States District Court,
C.D. California.

April 4, 2007.

Lil G. Delcampo, Patric Hooper, Hooper Lundy and Bookman, Los Angeles, CA, for Plaintiff.

Eric D. Bates, Karen L. Fried, Office of Attorney General of California, Los Angeles, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COOPER, District Judge.

This matter is before the Court on the Motion for Summary Judgment of Plaintiff Cleanmaster Industries Inc., dba Prescriptions Plus (Cleanmaster Industries), filed on October 3, 2006 (docket no. 27). The Court has read and considered the moving, opposition, and reply documents submitted in connection with this Motion, as well as the papers submitted in response to the Court's November 15, 2006, Order Requesting Further Briefing. The matter was heard on November 11, 2006, at which time the parties were in receipt of the Court's November 8, 2006, Tentative Order. For the reasons and in the manner set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

■ Plaintiff Cleanmaster Industries operates a "closed door" pharmacy. (Def.'s Statement of Genuine Issues in Opp'n to Pl.'s Statement of Uncontroverted Facts (Opp'n Statement) ¶ 1.[1]) It delivers filled prescriptions to over 1,500 patients, many of whom are homebound. (Decl. of Joseph Kahan in Support of Application for TRO (Kahan Decl.) ¶ 4.) It participates in Medi–Cal, a California program that works in conjunction with Medi-

---

**1.** Defendant states simply that this fact is "disputed," as it does in response to virtually all of the plaintiff's factual allegations. To raise a genuine issue of material fact, however, the defendant must do more than make such a bald, unsupported assertion. *Harper v. Wallingford,* 877 F.2d 728 (9th Cir.1989). Accordingly, to the extent that the defendant fails to indicate why a dispute exists or point to countervailing evidence in the record, the Court accepts the plaintiff's allegations as true. *See* Local Rule 56–3 ("the Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist ... except to the extent that such material facts are ... controverted by declaration or other written evidence filed in opposition to the motion.").

care to provide health care and medicine to those in need. (*Id.* at ¶ 6.) Cleanmaster Industries has been a Medi–Cal provider for approximately sixteen years and relies on the program for over 80 percent of its business. (Opp'n Statement ¶¶ 1, 4.)

As part of its efforts to expose and eliminate fraud, the California Department of Health Services (the Department) routinely chooses categories of providers to reenroll in the program. If the Department denies an application for reenrollment, the provider is removed from the program and may not reapply for three years from the date of denial. Cal. Welf. & Inst.Code § 14043.26 (West 2006). The Department's decision to deny an application may be contested through a written-only appeals process. Cal. Welf. & Inst. Code § 14043.65(a) (West 2006). Choosing to appeal the decision, however, causes the period of debarment to be extended such that the former provider may not reenroll in the Medi–Cal program for three years from the date of that appeal's final disposition. Cal. Welf. & Inst.Code § 14043.65(b) (West 2006).

In 2003, the Department required the plaintiff to reenroll in the Medi–Cal program and, on March 23, 2006, gave notice that its application was denied. (Opp'n Statement ¶¶ 6, 9.) The plaintiff chose not to appeal the Department's decision through the administrative process but instead filed the present action seeking declaratory relief and an injunction. The plaintiff argues that the process the Department employs to remove providers from the Medi–Cal program violates providers' due process rights by (1) denying them an opportunity to be heard prior to removal, (2) failing to provide a full, testimonial hearing promptly following debarment, and (3) penalizing applicants who appeal the Department's decisions by prolonging the period during which they are precluded from reenrolling in the Medi–Cal program.

On May 12, 2006, the Court issued a TRO enjoining the defendant from debarring Cleanmaster Industries or precluding it from continuing to operate as a Medi–Cal provider. On October 3, 2006, the plaintiff filed the present motion for summary judgment. The matter was heard on November 11, 2006, and, on November 15, 2006, the Court issued an order requesting additional briefing on whether the doctrine of collateral estoppel precluded Cleanmaster Industries from bringing an as applied challenge to § 14043.65 without first challenging the Department's decision through a writ of administrative mandamus.

## STANDARD OF LAW

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all inferences in the light most favorable to the nonmoving party. *Id.* at 630–31. The evidence presented by the parties must be admissible. Fed.R.Civ.P. 56(e). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude the use of summary judgment. *Harper v. Wallingford,* 877 F.2d 728 (9th Cir.1989).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. *See Gulf Ins. Co. v. Hi–Voltage Wire Works, Inc.,* 388 F.Supp.2d 1134, 1136 (E.D.Cal.2005) (citing *Mora v. Chem–Tronics, Inc.,* 16 F.Supp.2d 1192, 1200 (S.D.Cal.1998)).

## DISCUSSION

### I. Propriety of 42 U.S.C. § 1983 Claims

In its opposition to the plaintiff's Motion for Summary Judgment, the defendant has renewed its objection to the plaintiff's ability to bring this action under 42 U.S.C. § 1983. It insists that the plaintiff's claims are premised on violations of various agency regulations, which cannot support § 1983 actions as they do not create enforceable rights. As the Court made clear in its Order Granting in Part and Denying in Part Defendant's Motion to Dismiss (docket no. 26), the plaintiff has properly brought its claims under § 1983

because they concern violations of the plaintiff's due process rights guaranteed by the Fourteenth Amendment. *See, e.g., Armendariz v. Penman,* 75 F.3d 1311 (1996) (considering a procedural due process challenge brought pursuant to 42 U.S.C. § 1983).

### II. Protected Liberty Interest

The Ninth Circuit has held that, although a provider does not have a right to continued participation in the Medicare, Medicaid, or related state programs, a provider's liberty interest is implicated, invoking procedural due process protections, where "a charge impairs [its] reputation for honesty or morality," "the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment or the alteration of some right or status recognized by [ ] law." *Erickson v. U.S. ex rel. Dep't of Health and Human Servs.,* 67 F.3d 858, 862 (9th Cir.1995) (internal quotations and citations omitted). Despite the Court's conclusions in its previous orders that these elements have been satisfied, the defendant attempts to resurrect this issue with a declaration by one of the Department's employees that the charges will not be made public.[2] It also argues that the charges against the plaintiff did not concern the plaintiff's honesty or integrity.

Irrespective of the Department's policy, the law is clear that the defendant would have been required to report the plaintiff's exclusion from the Medi–Cal program to the Healthcare Integrity and Protection Data Bank (HIPDB). The HIPDB was created with the express purpose of "reporting and disclosing ... certain final

---

**2.** Raul Ramirez, the Chief of the Provider Enrollment Branch in the Payment Systems Division of the Department, has declared that the Department has a policy of only reporting "permanent, permissive or mandatory suspension[s]." (Decl. of Raul Ramirez (Ramirez Decl.) ¶¶ 1–2.)

adverse actions taken against health care providers, suppliers, or practitioners." 45 C.F.R. § 61.1 (2006). Such public disclosure would constitute precisely the type of publication found to affect a protected liberty interest in *Erickson. Erickson*, 67 F.3d at 862. Federal regulations provide that federal and state government agencies *"must* report health care providers . . . excluded from participating in Federal or State health care programs" to the HIPDB and imposes sanctions on agencies that fail to comply. 45 C.F.R. § 61.10 (2006) (emphasis added). The regulations define "exclusion" as "a temporary or permanent debarment of an individual or entity from participation in any Federal or State health-related program, in accordance with which items or services furnished by such person or entity will not be reimbursed under any Federal or State health-related program." 45 C.F.R. § 61.3 (2006).[3]

■ It is undeniable that the Department's deactivation of the plaintiff's provider numbers, removal of the plaintiff from the Medi–Cal program, denial of any further reimbursements to the plaintiff under the Medi–Cal program, and exclusion of the plaintiff from reentering the Medi–Cal program for a period of at least three years constituted an "exclusion" under the regulations. The Department's contention that it need only report "permanent" suspensions has no legal support and flatly contradicts the plain language of the statute, which requires reporting of "temporary or permanent debarment." *Id.* Accordingly, the Department would have been legally required to make the debarment public by reporting it to the HIPDB,

thereby implicating the plaintiff's liberty interest.

■ The Court is also unpersuaded that the charges against the plaintiff did not impugn the plaintiff's reputation for honesty or morality. The Department alleged that the plaintiff engaged in unlawful billing practices that constituted "abuse" under California Welfare and Institutions Code § 14043.1(a)(1). *See* Kahan Decl, Ex. K 2 (Department's letter to plaintiff explaining denial of its application). As in *Erickson*, a charge that a provider violated state or federal laws regulating billing practices under Medicare "impairs [its] reputation for honesty or morality." *Erickson*, 67 F.3d at 860. The Court therefore holds that the Department's charges against the plaintiff threatened the plaintiff's liberty interest in the maintenance of its professional reputation and entitled it to the protections of due process in connection with its debarment from the Medi–Cal program.

### III. Denial of Procedural Due Process

The plaintiff contends that three aspects of the statute concerning the debarment of providers from California's Medi–Cal program are constitutionally infirm: (1) they deny providers an opportunity to be heard prior to suspension from the program; (2) they fail to provide a "full trial-type hearing" where testimonial evidence may be presented following debarment; and (3) they penalize applicants who appeal agency decisions by prolonging the period during which they are precluded from reenrolling. (*See* Mot. 12:1–3, 13:8–10, 15:11–15.) The Court agrees that the penalty imposed by California Welfare and Institutions Code § 14043.65(b) on providers who

---

**3.** The reporting requirement applies "regardless of whether the exclusion is the subject of a pending appeal" and also includes exclusions that would otherwise be unreported because of a settlement under which "no findings or admissions of liability have been made." 45 C.F.R. § 61.10. (2006).

944

assert their right to appeal is facially unconstitutional. In addition, it concludes that the Department's failure to provide the plaintiff with an opportunity to be heard prior to suspending it from California's Medi–Cal program was unconstitutional under the circumstances of this case. However, with respect to the constitutionality of the postdebarment process afforded under § 14043.65(a), the Court finds that the plaintiff's as applied challenge is premature and that it has not met its burden in establishing that the statute cannot be constitutionally applied under any set of circumstances.

▆▆▆ "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This requirement is flexible, however, and what constitutes adequate process may vary considerably depending on context. *Gilbert v. Homar,* 520 U.S. 924, 928, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) ("Due process is flexible and calls for such procedural protections as the particular situation demands.") (internal quotations omitted); *Brewster v. Bd. of Educ.,* 149 F.3d 971, 983 (9th Cir.1998) ("Precisely what procedures the Due Process Clause requires in any given case is a function of context.") The determination of the procedure necessary to satisfy due process requirements in a particular context is guided by the three-part balancing test set out in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under *Mathews,* courts consider the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safe-

guards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 334, 96 S.Ct. 893.

### A. Collateral Estoppel

In its prior, tentative order, the Court rejected the plaintiff's facial challenge to California Welfare and Institutions Code § 14043.65. It found that the plaintiff failed to establish that there was no set of facts under which it would be constitutional for the state to suspend a Medi–Cal provider without first providing a hearing. At oral argument, the plaintiff insisted that its challenge was an as applied challenge. Before considering the constitutionality of § 14043.65 as applied to the plaintiff, the Court must first consider whether the plaintiff may bring such a challenge.

▆▆ Previously, the defendant moved to dismiss the plaintiff's § 1983 claims based on collateral estoppel. The defendant argued that the plaintiff's failure to file a petition for a writ of administrative mandamus pursuant to California Code of Civil Procedure § 1085 gave the Department's decision to debar the plaintiff from the Medi–Cal program preclusive effect. In its September 28, 2006, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss (docket no. 26), the Court held that the plaintiff's failure to petition for a writ of mandamus did not estop it from pursuing a claim under 42 U.S.C. § 1983, in part because it construed the plaintiff's claim as a facial constitutional challenge and the doctrine of claim preclusion does not apply under such circumstances. *See City of Santee v. Superior Court,* 228 Cal.App.3d 713, 718–19, 279 Cal.Rptr. 22 (1991) ("Unless a party seeks a declaration a statute or ordinance con-

trolling development is facially unconstitutional ... declaratory relief may not be had...."").

The plaintiff now contends that it is seeking to have California Welfare and Institutions Code § 14043.65 declared unconstitutional as applied to Cleanmaster Industries. Although the Court has waived the requirement that the plaintiff exhaust its administrative remedies, that holding has no bearing on the separate question of whether the doctrine of collateral estoppel precludes Cleanmaster Industries from bringing an as applied challenge to § 14043.65 without first challenging the Department's decision through a writ of administrative mandamus. *See Miller v. County of Santa Cruz*, 39 F.3d 1030, 1034 n.3 (9th Cir. 1994); *Embury v. King*, 191 F.Supp.2d 1071, 1083 (N.D.Cal.2001) (holding that the doctrine of claim preclusion, but not the requirement to exhaust state judicial and administrative remedies, applied to the plaintiff's civil rights claim).

■ The Ninth Circuit has held that federal courts must give preclusive effect to administrative adjudications of legal and factual issues, even if unreviewed, where (1) the administrative agency acted in a judicial capacity, (2) the agency resolved disputed issues of fact properly before it, and (3) the parties had an adequate opportunity to litigate. *Miller*, 39 F.3d at 1033 (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)). Because parties need only have the *opportunity* to litigate, they may not "obstruct the preclusive use of the state administrative decision simply by foregoing [the] right to appeal." *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir.1988) (internal quotations omitted). Instead, in considering whether the parties had the opportunity to litigate, courts will consider the available adminis-

trative process, including the availability of judicial review through a petition for a writ of mandamus.

Whether the Department was acting in a judicial capacity when it decided to debar the plaintiff remains an open question. However, whether this and the other two *Miller* requirements were satisfied under the circumstances in this case need not be determined because the Court need not disturb any of the Department's legal or factual findings in order to reach a decision as to the plaintiff's due process claims. The plaintiff never raised any such claims before the Department and the Department never considered them. Therefore, even if the Department's findings (that the plaintiff engaged in prohibited activities necessitating its suspension from participation in California's Medi–Cal program) were binding, they would not preclude the Court from deciding whether the Department failed to provide the constitutionally mandated procedural safeguards necessary to protect Cleanmaster Industries' liberty interest. *Cf. Misischia v. Pirie*, 60 F.3d 626 (9th Cir.1995) (holding that the plaintiff could not bring his due process challenge in federal court because he failed to seek mandamus after first raising his due process objections with the agency, which considered and ruled on them).

Moreover, as discussed in the Court's September 28, 2006, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, in order to seek a writ of mandamus to review the agency's decision in this matter, the plaintiff would be required by California Welfare & Institutions Code § 14043.65 to first pursue the written appeals process it now argues is unconstitutional and suffer the very irreparable harm that this litigation seeks to avoid. *See* Cal.Code Civ. Proc. § 1085; Cal. Welf. & Inst.Code § 14043.65 (West 2006). Fortunately, as this Court need not

disturb the Department's factual or legal findings in order to rule on the plaintiff's due process claims, the law does not require such a harsh result. The Court concludes that the plaintiff's failure to petition for a writ of mandamus does not estop it from pursuing a claim under 42 U.S.C. § 1983.

## B. Predebarment Hearings

The plaintiff insists that it was entitled to a hearing where it could contest the Department's findings prior to Cleanmaster Industries' debarment or, alternatively, the Department's publication of Cleanmaster Industries' debarment to the HIPDB.

The Department has concluded that "[b]efore sensitive or 'stigmatizing' information can be released, a 'name-clearing' hearing consistent with due process requirements such as notice, opportunity to be heard in a meaningful time and manner as well as the opportunity to confront all of the evidence against the Medi–Cal provider, must first occur." (Ramirez Decl. ¶ 3.) The Department has also determined that the postdebarment appeal process provided for in California Welfare and Institutions Code § 14043.65(a) is insufficient to satisfy this requirement. (*Id.*) Rather than providing a hearing prior to publicizing stimitizing information, however, the Department has attempted to circumvent the procedural requirements of the due process clause by simply not disclosing temporary suspensions. (*Id.* at ¶ 4.) As discussed above, this option is not legally available to the Department, which must report even temporary suspensions to the HIPDB.

 Under the Department's own reasoning, then, it would appear that a predebarment hearing is required in this case. However, the right to a predeprivation hearing is not absolute. The Supreme Court has held that an "important govern-ment interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." *Fed. Deposit Ins. Corp. v. Mallen,* 486 U.S. 230, 240, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988). Nonetheless, the Department is correct that, absent such exceptional circumstances, "the law [is] clearly established that publication of stigmatizing information without a name-clearing hearing violates due process." *Cox v. Roskelley,* 359 F.3d 1105, 1106 (9th Cir.2004); *see also Bd. of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (holding that "due process would accord [an employee with] an opportunity to refute" his employer's charges of dishonesty or immorality prior to his termination); *Finkelstein v. Bergna,* 924 F.2d 1449, 1452 (9th Cir.1991) (holding that "where predeprivation process is feasible, it must be afforded before a person may be deprived of a protected interest.").

 The Department has not provided evidence of any circumstances that would necessitate the immediate suspension of the plaintiff from the Medi–Cal program, and the concomitant publication of that debarment to the HIPDB, prior to providing the plaintiff with a name-clearing hearing. Accordingly, the Court holds that, under the circumstances of this case, the due process clause of the Fourteenth Amendment requires the Department to conduct a hearing at which Cleanmaster Industries has a meaningful opportunity to contest the charges against it before the Department may debar or suspend the plaintiff, or otherwise preclude Cleanmaster Industries from continuing to operate as a Medi–Cal provider.

## C. Postdebarment Process

■] The plaintiff argues that the postdebarment process afforded under California Welfare and Institutions Code § 14043.65 is also inadequate because it consists of a written-only appeals process that can take up to 150 days to complete.

■] Under the three-part balancing test of *Mathews*, the adequacy of any postdebarment process in this particular case will depend on the nature of the predebarment process the Department offers the plaintiff following this Order. *See Mathews*, 424 U.S. 319, 334, 96 S.Ct. 893 (requiring courts to consider "the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards....."). As such, an as applied challenge to the postdebarment process provided to Cleanmaster Industries following a deprivation of its rights is presently premature.

■ The Court may, however, consider a facial challenge to the constitutionality of § 14043.65 at this time. To prevail in such a challenge, the plaintiff has the burden of establishing "that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (noting that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully"). The Court is not satisfied that the application of California Welfare and Institutions Code § 14043.65 will necessarily violate the constitutional rights of debarred providers in every instance.

The California Court of Appeal considered a similar challenge to the constitutionality of § 14043.65 in *Marvin Lieblein, Inc. v. Shewry*, 137 Cal.App.4th 700, 40 Cal.Rptr.3d 547 (2006). In *Marvin Lieblein, Inc.*, the plaintiff was a pharmacy that submitted an application to the Department for continued enrollment as a Medi-Cal pharmacy provider. *Marvin Lieblein, Inc.*, 137 Cal.App.4th at 706, 40 Cal.Rptr.3d 547. The Department rejected the application based on the plaintiff's failure to disclose discipline of its president and sole shareholder, whom the State Board of Pharmacy had recently placed on probation. *Id.* The Department notified the plaintiff of its decision to deny the company's application and bar it from reapplying for a period of three years. *Id.* The plaintiff appealed the decision with the Department, which denied the appeal. *Id.* The plaintiff then petitioned for a writ of mandate in the superior court challenging the adequacy of the process the statute provided the plaintiff during his appeal. *Id.* Reviewing the superior court's decision to deny the plaintiff's petition, the court rejected the plaintiff's argument that the Department violated the plaintiff's due process rights by refusing to permit live testimony at an evidentiary hearing. *Id.* at 721–22, 40 Cal.Rptr.3d 547.

Applying the three-part test from *Mathews*, the court found that the interests of the plaintiff, which alleged the debarment would put it out of business, and the Department were equally significant. *Id.* at 721, 40 Cal.Rptr.3d 547. Its inquiry therefore focused on the probable value of additional procedural safeguards. *Id.* at 721–22, 40 Cal.Rptr.3d 547. It concluded that the written-only appeal process did not impose a significant risk of erroneously upholding a decision to debar a deserving applicant, that live testimony would not be likely to lessen any such risk, and that the increased fiscal and administrative burden on the Department from allowing live testimony would not be justified. *Id.* It found that because evidence regarding whether an applicant failed to make a required disclosure was objective, and because intent was immaterial to the Department's

decision, live testimony would provide little benefit to offset its significant cost. *Id.* at 722, 40 Cal.Rptr.3d 547. The court also surveyed the jurisprudence of California and found that, even where "credibility issues were clearly in play," those cases most on point similarly held that due process did not require permitting live testimony in administrative hearings. *Id.* at 722–24, 40 Cal.Rptr.3d 547(discussing *Rodriguez v. Dep't of Real Estate,* 51 Cal. App.4th 1289, 59 Cal.Rptr.2d 652 (1996) (holding that broker whose license was suspended was not entitled to a predeprivation hearing with live testimony); *Holmes v. Hallinan,* 68 Cal.App.4th 1523, 81 Cal.Rptr.2d 174 (1998) (rejecting due process challenge by state employee who was not allowed to call live witnesses at his pretermination hearing)).

Although the plaintiff argues the decision in *Marvin Lieblein, Inc.* was erroneous, the Court is persuaded that, in a situation where intent is immaterial and all the relevant evidence is objective, the benefits of live testimony do not outweigh the costs. Accordingly, it agrees with the California Court of Appeal that there are circumstances under which § 14043.65 does not fail to provide the minimum process due under the Constitution.

The Court reaches the same conclusion with respect to the time permitted to resolve an appeal. Section 14043.65 dictates that the Department "shall issue a decision within 90 days of the receipt of the appeal." Although the process may take up to 150 days from start to finish, the remaining sixty days are within the provider's control. They are furnished to give the provider time to decide whether to pursue an appeal and to formulate a written submission, if necessary. This process is nearly identical to that found constitutional in *Fed. Deposit Ins. Corp. v. Mallen,* 486 U.S. 230, 240, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988), where the statute at issue required the Federal Deposit Insurance Corporation to reach a decision on the appropriateness of a bank officer's suspension within ninety days after the officer requested a hearing. *Fed. Deposit Ins. Corp.,* 486 U.S. at 242, 108 S.Ct. 1780.

In individual cases, the circumstances may alter the balance of interests under the *Mathews* test such that the Department, by waiting a full ninety days to reach a decision, may violate a provider's rights under the due process clause. However, where Medi–Cal is responsible for only a small fraction of a provider's income, the balance of interests under *Mathews* will generally tip decidedly in favor of the Department, and it would be entitled under *Fed. Deposit Ins. Corp.* to take ninety days to issue a decision on a provider's appeal without violating that provider's rights. In addition, in a particularly complex case, further limiting the amount of time the Department had to consider and rule on an appeal might actually *increase* the chances of an erroneous decision. Accordingly, the plaintiff's claim that due process requires the Department under all circumstances to permit live testimony at an evidentiary hearing and to reach a final decision in fewer than ninety days fails as a matter of law.

## D. Penalizing Providers Who Appeal

■ California Welfare and Institutions Code § 14043.65(b) provides that a provider whose application for enrollment is denied "may not reapply for a period of three years from the date the application is denied." However, if that provider appeals the denial, "the three-year period shall commence upon the date of final action by the director or the director's designee." *Id.* This is despite the fact that deactivated provider numbers "shall not" be reactivated during an appeal. Cal.

Welf. & Inst.Code § 14043.65(a) (West 2006). Essentially, any provider that appeals the denial of its application will be debarred for a longer period of time than it would have been had it not exercised its right to appeal. The plaintiff argues that imposing such a penalty for taking an appeal is unconstitutional. The Court agrees.

■ Regardless of what a state's objectives might be in regulating, "they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights." *United States v. Jackson*, 390 U.S. 570, 582, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (declaring unconstitutional portion of act that imposed a harsher penalty on those who exercised right to a jury trial, rather than pleading guilty, despite Congress's expressed goal of mitigating severity of capital punishment); *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968) (holding dismissal of employees for refusal to waive their constitutional right against self-incrimination unconstitutional). The right to appeal, whether from the decision of an agency or a court, is one such basic constitutional right, and it is therefore protected from any state action that might unnecessarily chill its exercise. *N. Carolina v. Pearce*, 395 U.S. 711, 723–24, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (declaring practice of imposing harsher sentences on criminal defendants reconvicted after pursuing successful appeals unconstitutional because such a policy "serve[s] to chill the exercise of basic constitutional rights" and because a "defendant's exercise of a right of appeal must be free and unfettered.") (citing *Jackson*, 390 U.S. at 581, 88 S.Ct. 1209) (internal quotations omitted); *Cal. Teachers Ass'n v. State of California*, 20 Cal.4th 327, 84 Cal.Rptr.2d 425, 975 P.2d 622 (1999) (finding statute that required

teachers who contested their terminations to pay half the cost of a hearing facially invalid because "[t]he imposition of a cost or risk upon the exercise of the right to a hearing is impermissible if it has 'no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them.' ") (quoting *Fuller v. Oregon*, 417 U.S. 40, 54, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974)); *see also Blackledge v. Perry*, 417 U.S. 21, 28–29, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (holding "that it was not constitutionally permissible for the State to respond to [the defendant's] invocation of his statutory right to appeal [his misdemeanor conviction] by bringing a more serious charge against him prior to the trial de novo.").

In determining whether a statute so chills the exercise of a protected right as to be unconstitutional, "[t]he question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive." *Jackson*, 390 U.S. at 582, 88 S.Ct. 1209; *see also United States v. Chavez*, 627 F.2d 953, 957 (9th Cir.1980) (holding that requiring defendant convicted of wilfully failing to file tax returns to pay the costs of prosecution was properly part of the punishment of the crime, served a legitimate government purpose, and therefore did not needlessly encourage the waiver of constitutional rights).

The defendant here has failed to demonstrate why it is necessary to increase the time a provider is barred from reapplying for enrollment in the Medi–Cal program if the provider appeals the initial debarment. The defendant simply states that the time "is extended to account for the time involved in the appeals process." However, because the implementation of the provider's suspension from the program is not stayed pending the appeal's resolution, the Court cannot imagine, and the defendant

has not proffered, any legitimate reason for the increased penalty. A provider who appeals is not made any more dangerous to the public, nor more worthy of punishment, by the mere act of appealing. The ineluctable conclusion is therefore that the debarment period is extended in order to deter providers from exercising their right to appeal. As the extension is unnecessary and therefore excessive, the Court holds that the second sentence of California Welfare and Institutions Code § 14043.65(b), providing that "[i]f the provider has appealed the denial, the three-year period shall commence upon the date of final action by the director or the director's designee," is unconstitutional on its face.

■ The Court further finds that the above provision is fully severable and not so critical to the functioning or purpose of § 14043.65 as to make evident that the legislature would not have enacted the statute absent inclusion of the unconstitutional penalty for taking appeals. *See Champlin Ref. Co. v. Corp. Comm'n of Okla.,* 286 U.S. 210, 234, 52 S.Ct. 559, 76 L.Ed. 1062 (1932) (holding that unconstitutional portion of an act does not defeat validity of its remaining provisions so long as "what is left is fully operative as a law" and "[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not."), *quoted in United States v. Booker,* 543 U.S. 220, 280–81, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the plaintiff's Motion for Summary Judgment (docket no. 27). Prior to suspending the plaintiff from participating in the Medi–Cal program, the Department shall provide Cleanmaster Industries with notice of the charges against it, an explanation of the Department's evidence in support of those charges, and a meaningful opportunity to respond.

In addition, the Court hereby strikes down the following provision of California Welfare and Institutions Code § 14043.65(b) as unconstitutional: "If the provider has appealed the denial, the three-year period shall commence upon the date of final action by the director or the director's designee."

Within ten days of the date of entry of this Order, Plaintiff shall prepare and lodge a Judgment for the Court's signature.

**IT IS SO ORDERED.**