**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EDUARDO J. GUZMAN, M.D.,
*Plaintiff-Appellant,*

v.

SANDRA SHEWRY, Director of the
California State Department of
Health Care Services,
*Defendant-Appellee.*

No. 08-55326

D.C. No.
08-CV-00769-
MMM

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted
June 4, 2008—Pasadena, California

Filed September 23, 2008
Amended January 15, 2009

Before: David R. Thompson, Diarmuid F. O'Scannlain, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge O'Scannlain

## COUNSEL

Patric Hooper, Hooper, Lundy & Bookman, Inc., Los Angeles, California, argued the cause for the plaintiff-appellant and filed briefs.

Janet E. Burns, Deputy Attorney General, State of California, Los Angeles, California, argued the cause for the defendant-appellee and filed a brief; Phillip J. Matsumoto, Deputy Attorney General, Richard T. Waldow, Supervising Attorney General, Douglas M. Press, Senior Assistant Attorney General, and Edmund G. Brown, Jr., Attorney General for the State of California, were on the brief.

## ORDER

The opinion filed in this case on September 23, 2008, is AMENDED as follows:

At page 13362, line 24 of the slip opinion, after the sentence concluding "halt the temporary suspension," insert a new footnote reading <In his complaint, Guzman alleges that he also brings this claim directly under the Supremacy Clause. As such a claim is not "specifically and distinctly" put forward in his opening brief, we decline to consider it. *See Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).>

The panel has voted unanimously to deny the petition for rehearing. Judges O'Scannlain and Tallman have voted to deny the petition for rehearing en banc and Judge Thompson so recommends. The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and the petition for rehearing en banc are DENIED. No further petitions for rehearing or rehearing en banc may be filed.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether a district court abused its discretion in denying a physician a preliminary injunction to halt his temporary suspension from California's Medi-Cal program based on his claims that such suspension violates federal Medicaid law and is prohibited by the Due Process Clause of the Fourteenth Amendment.

# I

## A

Medicaid is a cooperative federal-state program that authorizes the United States Government to provide funds to participating states to administer medical assistance to individuals "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. The program operates by authorizing the Federal Government to pay a percentage of the costs a state incurs for patient care, and, in return, the state complies with certain federal requirements. *See* 42 U.S.C. § 1396a. Administration of the program is entrusted to the Secretary of Health and Human Services ("HHS"), who also has the authority to promulgate regulations under the Medicaid Act. California participates in Medicaid through the California Medical Assistance Program ("Medi-Cal"), and has designated its Department of Health Care Services ("DHCS" or the "Department")[1] as the agency responsible for its administration. *See id.* § 1396a(a)(5); Cal. Welf. & Inst. Code §§ 10720, 14000.

## B

Dr. Eduardo J. Guzman, M.D., is an obstetrician/gynecologist who provides services through Medi-Cal. Sometime in 2006, DHCS opened an investigation into certain claims Guzman had submitted to Medi-Cal for payment. On August 30, 2006, after several searches of his offices in Downey and Norwalk, California, DHCS filed an Accusation against Guzman alleging that he had imported large quantities of intrauterine devices ("IUDs") from Mexico that had not been approved by the Food and Drug Administration ("FDA")

---

[1]As of July 1, 2007, the duties of the California Department of Health Services were modified and the agency was renamed the Department of Health Care Services. *See* Cal. Health & Safety Code § 20. Hereinafter, this opinion shall refer to the agency by its current name, DHCS.

for use in this country; that he had inserted such devices into his patients, Medi-Cal beneficiaries; and that he had billed Medi-Cal for his services, fraudulently claiming that the devices used were FDA-approved. The Accusation notified Guzman that DHCS would seek permanently to suspend him from the Medi-Cal program as a result of these allegations. *See* Cal. Welf. & Inst. Code § 14123. Some time later, the California Attorney General's Office filed felony criminal charges against Guzman arising from the same alleged conduct.[2]

DHCS scheduled an administrative hearing on the Accusation for August 2007, but Guzman requested that it be postponed until the criminal proceedings against him were concluded.[3] DHCS granted the request. Nevertheless, on January 22, 2008, DHCS sent Guzman a letter informing him that he would be suspended temporarily from participating in Medi-Cal because of the pending criminal proceedings against him. The letter stated that the suspension would take effect on February 6, 2008, and would continue until Medi-Cal determined that he was "no longer under investigation" or until "after legal proceedings related to the alleged fraud or abuses are completed." Once enforced, the suspension would prohibit Guzman from billing Medi-Cal for any services rendered.[4]

---

[2]The felony complaint filed in California Superior Court charged Guzman with two counts of grand theft, in violation of California Penal Code section 487(a) and California Welfare and Institutions Code section 14107(b)(4)(A); three counts of making false or fraudulent claims, in violation of California Penal Code sections 550(a)(5), (6), and (7); and two counts of delivering a misbranded drug or device, in violation of California Health and Safety Code sections 111440 and 111450.

[3]As of the date of oral argument, no trial date in the criminal case had yet been set and no hearing on the Accusation had yet been held.

[4]To obtain reimbursement for services provided through Medi-Cal, a medical professional must enroll in the Medi-Cal program and receive a "provider number." Cal. Code Regs. tit. 22, §§ 51000.7, 51000.20. The letter informed Guzman that all provider numbers assigned to him would be "temporarily suspend[ed] and deactivat[ed]."

As the letter explained, California law entitled Guzman to appeal the temporary suspension. DHCS concedes, however, that such appeal is limited to the question of whether a provider is, in fact, under investigation for fraud or abuse. Thus, Guzman would not have been able to contest the underlying allegations against him in such an appeal. In addition, the letter explained that Guzman also had the right to "request a meeting with [DHCS] representatives" if he believed the information on which Medi-Cal was relying was erroneous. *See* Cal. Welf. & Inst. Code § 14123.05. It is not clear whether Guzman would have been able to challenge the validity of the underlying fraud allegations at such a meeting. In any event, Guzman decided not to avail himself of either procedure.

## C

On February 5, 2008, Guzman filed a complaint against DHCS in the district court under 42 U.S.C. § 1983 seeking a preliminary injunction to halt the temporary suspension.[5] Guzman asserted that a preliminary injunction was necessary because his suspension would irreparably harm his patients, his practice, and his reputation.[6] Although a California statute authorizes such suspension, Cal. Welf. & Inst. Code § 14043.36(a), Guzman argued that the statute was preempted

---

[5]In his complaint, Guzman alleges that he also brings this claim directly under the Supremacy Clause. As such a claim is not "specifically and distinctly" put forward in his opening brief, we decline to consider it. *See Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).

[6]In addition to the loss of revenue from his Medi-Cal patients, Guzman noted that he was under contractual obligations to report any such suspension to the hospitals with which he is affiliated and to the independent physicians' associations of which he is a member. Guzman predicted that the hospitals would suspend or revoke his staff privileges and that the associations would terminate his membership, actions that would preclude him from receiving payments from private insurance companies that represent his non-Medi-Cal patients.

by federal law, and that he was entitled to a pre-suspension hearing either by federal Medicaid statutes and regulations or, in the alternative, the Due Process Clause of the Fourteenth Amendment.

DHCS agreed to delay enforcement of the suspension for one month, allowing the district court sufficient time to rule on Guzman's expedited motion for a preliminary injunction. On March 4, 2008, the district court denied the motion, concluding that Guzman would not likely be able to show that California Welfare and Institutions Code section 14043.36(a) was preempted by federal law, or that he had a statutory or constitutional right to a pre-suspension hearing. Nevertheless, the district court granted a limited stay allowing Guzman to file an emergency motion in this court to enjoin the suspension pending appeal. On March 5, 2008, a motions panel of this court denied the motion, but expedited the briefing schedule and the date of oral argument. This timely appeal followed.

II

"Our review of the denial of a preliminary injunction is limited and deferential." *Wildwest Inst. v. Bull*, 472 F.3d 587, 589 (9th Cir. 2006) (internal quotation marks omitted). "We ask only whether the district court has abused its discretion." *Id.* In such cases, the scope of our review is "generally limited to whether the district court [1] employed the proper preliminary injunction standard and [2] whether the court correctly apprehended the underlying legal issues in the case." *Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1298 (9th Cir. 2003). In other words, "[a]s long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case." *Wildwest Inst.*, 472 F.3d at 590.

A district court may grant a preliminary injunction under two sets of circumstances. In the first case, " 'a plaintiff must

show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).' " *Natural Res. Def. Council, Inc. v. Winter*, 518 F.3d 658, 677 (9th Cir. 2008) (quoting *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007)). In the second case, "a court may grant the injunction if the plaintiff demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* (emphasis added) (quoting *Freecycle*, 505 F.3d at 902).

The district court articulated this standard and, in applying it, held that Guzman had failed to show a likelihood of success on the merits. Thus, the court declined to consider the possibility that Guzman would suffer irreparable injury. Such action was a valid exercise of the court's discretion. As we have held previously, before a preliminary injunction is granted, at " 'an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation.' " *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006) (quoting *Arcamuzi v. Cont'l Airlines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987)). Thus, we must decide whether the district court correctly apprehended the law underlying Guzman's claims in concluding that he was unlikely to prevail. We now consider each of those claims in turn.

### III

### A

We begin with Guzman's claim that California Welfare and Institutions Code section 14043.36(a) is preempted by federal law. "Under the Supremacy Clause, U.S. Const., art. VI, cl. 2, state laws that interfere with, or are contrary to the laws of congress, made in pursuance of the constitution are invalid."

*Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (internal quotation marks and citation omitted). Guzman argues that California Welfare and Institutions Code section 14043.36(a) runs afoul of this provision because it conflicts with, and is therefore preempted by, federal Medicaid law. In preemption cases, we begin with the presumption that the "historic police powers of the States" are not superseded by federal law unless such result was the "clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks and citation omitted).

Section 14043.36(a) states that

> [i]f it is discovered that a provider is under investigation by the department or any state, local, or federal government law enforcement agency for fraud or abuse, that provider shall be subject to temporary suspension from the Medi-Cal program, which shall include temporary deactivation of the provider's number, including all business addresses used by the provider to obtain reimbursement from the Medi-Cal program.

*Id.* Guzman argues that this statute is preempted because federal law prohibits states from suspending providers from a state health care program simply because the provider is "under investigation" for fraud or abuse.

B

**[1]** Medicaid, by definition, is a cooperative federal-state medical benefits assistance program. *See* 42 U.S.C. § 1396a. As we have stated before, because such program "exemplifies what is often referred to as cooperative federalism," "the case for federal preemption becomes a less persuasive one." *Wash. Dep't of Soc. & Health Servs. v. Bowen*, 815 F.2d 549, 557 (9th Cir. 1987) (internal quotation marks and citations omitted). The Medicaid statutes contain no "explicit pre-emptive

language" limiting the grounds upon which a state may suspend a provider from a state health care program.[7] *See Mortier*, 501 U.S. at 605. Thus, we must determine whether the federal Medicaid scheme is " 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' " *id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)), or whether compliance with the California statute " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' " *id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

## C

**[2]** Section 1128 of the Social Security Act lists certain grounds upon which the Secretary of HHS must exclude providers from a federal health care program; the Act also lists certain other grounds upon which the Secretary may do so in his discretion. *See* 42 U.S.C. § 1320a-7. In listing the discretionary grounds for suspension, one subsection of the Act explains that the Secretary may exclude or suspend "[a]ny individual or entity which has been suspended or excluded from participation . . . [in] a State health care program, for reasons bearing on the individual's or entity's professional competence, professional performance, or financial integrity." *Id.* § 1320a-7(b)(5). This provision plainly contemplates that states have the authority to suspend or to exclude providers from state health care programs for reasons other than those upon which the Secretary of HHS has authority to act. Were such not the case, this subsection would not vest the Secretary with any authority not already provided elsewhere in the statute, and its inclusion would be redundant. *See Spencer Enters., Inc. v. United States*, 345 F.3d 683, 691 (9th Cir.

---

[7]The Social Security Act *requires* states to exclude providers from state health care plans if directed to do so by the Secretary of HHS, 42 U.S.C. § 1396a(a)(39), but it does not expressly prohibit states from excluding or suspending providers in other circumstances.

2003) ("[I]t is . . . a 'cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant.' " (quoting *Kungys v. United States*, 485 U.S. 759, 778 (1988))); *see also Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006) (same).

**[3]** The applicable Medicare regulations confirm this view. The regulation describing "State-Initiated Exclusions from Medicaid" provides that "a State may exclude an individual or entity from participation in the Medicaid program for any reason for which the Secretary could exclude that individual or entity." 42 C.F.R. § 1002.2(a). Next, it instructs that "nothing [in the regulations] should be construed to limit a State's own authority to exclude an individual or entity from Medicaid for any reason or period authorized by State law." *Id.* § 1002.2(b). Thus, not only does the applicable federal statute fail to prohibit states from suspending providers from state health care programs for reasons other than those upon which the Secretary of HHS may act, the governing regulation specifically instructs that states have such authority.

**[4]** Accordingly, nothing in the federal Medicaid statutes or regulations prevents a state from suspending a provider temporarily from a state health care program on the basis of an ongoing investigation for fraud or abuse, as California Welfare and Institutions Code section 14043.36(a) permits. Thus, we agree with the district court that Guzman is unlikely to prevail on the merits of his claim that such statute is preempted by federal law.

IV

Even if California Welfare and Institutions Code section 14043.36(a) is not preempted, Guzman argues that federal Medicaid law entitles him to a hearing before his temporary suspension from the Medi-Cal program is imposed. Guzman seeks to enforce such purported right through 42 U.S.C. § 1983.

**[5]** Section 1983 creates a cause of action against any person who, under color of state law, deprives "any citizen of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Id.* Although this statute enables plaintiffs to enforce federal statutory rights, *Maine v. Thiboutot*, 448 U.S. 1, 4-5 (1980), it "does not provide an avenue for relief every time a state actor violates a federal law," *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119 (2005). Thus, to demonstrate that he is entitled to a pre-suspension hearing under federal Medicaid law, Guzman must establish that a federal statute unambiguously entitles him to such a right. After all, "[t]he Supreme Court has held that only violations of *rights*, not *laws*, give rise to § 1983 actions." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 936 (9th Cir. 2003) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)).

A

**[6]** Guzman contends that he is afforded the right to a pre-suspension hearing by several Medicaid statutes and regulations. First, he points to the Social Security Act, which requires the Secretary of HHS to afford "reasonable notice and opportunity for a hearing" to any provider excluded from any federal health care program. 42 U.S.C. § 1320a-7(f)(1). Yet by its plain terms, such provision applies only to exclusions imposed by the Secretary himself; it does not govern state exclusion procedures. Accordingly, the provision does not control Guzman's state-initiated temporary suspension.

B

Second, Guzman points to the federal regulations that set forth the requirements for "State-Initiated Exclusions from Medicaid," 42 C.F.R. §§ 1002.1-.230. One such regulation requires the relevant state agency to "have administrative procedures in place that enable it to exclude an individual or

entity for any reason for which the Secretary could exclude such individual or entity." *Id.* § 1002.210. Another regulation provides that the state agency must give the individual or entity "the opportunity to submit documents and written argument against" such exclusion and "any additional appeals rights that would otherwise be available under procedures established by the State." *Id.* § 1002.213.

**[7]** By their express terms, such regulations do not apply to Guzman's temporary suspension from Medi-Cal because they set forth only those procedures which a state must follow in excluding providers for reasons upon which the Secretary of HHS could act. DHCS seeks temporarily to suspend Guzman from Medi-Cal because he is under investigation for fraud and abuse, as it has the authority to do under California Welfare and Institutions Code section 14043.36(a). The Secretary of HHS has no similar authority. Accordingly, a suspension under section 14043.36(a) is not controlled by §§ 1002.1-.230.[8]

C

Guzman points to one final source of his right to a presuspension hearing, 42 C.F.R. § 431.54(f). Consistent with Medicaid's purpose of providing health care to the indigent in quantity and quality equivalent to the standard of care available to the general population, federal law requires state health care plans to provide that "any individual eligible for medical assistance . . . may obtain such assistance from any institution . . . or person . . . qualified to perform the service

---

[8]Even if it were, Guzman's likelihood of success on the merits would remain insubstantial. Guzman was notified of his temporary suspension before it was enforced, and California law entitled him to file a written appeal, Cal. Welf. & Inst. Code § 14043.65, and a meeting with DHCS officials, *id.* § 14123.05. Moreover, California law gives Guzman the right to an in-person hearing before his suspension becomes permanent. *Id.* § 14123. Indeed, a hearing already would have taken place but for Guzman's request that DHCS postpone proceedings pending the resolution of his criminal trial.

or services required . . . , who undertakes to provide him such services." 42 U.S.C. § 1396a(a)(23). This mandate is sometimes referred to as the "freedom of choice" principle. *See Ball v. Rodgers*, 492 F.3d 1094, 1098 n.4 (9th Cir. 2007).

In the Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, 95 Stat. 357, Congress cabined such principle by creating exceptions to § 1396a(a)(23) allowing states to "lock in" certain beneficiaries who utilize Medicaid services "at a frequency or amount not medically necessary" by limiting the number of providers from whom they may obtain medical services. 42 U.S.C. § 1396n(a)(2)(A) (1982). Similarly, the Act allowed states to "lock out" certain providers from state health care programs upon a finding that the provider furnished medical services "at a frequency or amount not medically necessary" or "of a quality which does not meet professionally recognized standards of health care." *Id.* § 1396n(a)(2)(B).

**[8]** In 1983, HHS promulgated regulations to implement these exceptions, stating that, consistent with the Act, "a State shall not be deemed to be out of compliance with [the freedom of choice provision]" if it has "elected any of the exceptions set forth in [the regulation]," including subsection (f), which provides as follows:

> Lock-out of providers. If a Medicaid agency finds that a Medicaid provider has abused the Medicaid program, the agency may restrict the provider, through suspension or otherwise, from participating in the program for a reasonable period of time.

> Before imposing any restriction, the agency must meet the following conditions:

> (1) Give the provider notice and opportunity for a hearing, in accordance with procedures established by the agency.

(2) Find that in a significant number or proportion of cases, the provider has:

(i) Furnished Medicaid services at a frequency or amount not medically necessary, as determined in accordance with utilization guidelines established by the agency; or

(ii) Furnished Medicaid services of a quality that does not meet professionally recognized standards of health care.

(3) Notify CMS and the general public of the restriction and its duration.

(4) Ensure that the restrictions do not result in denying recipients reasonable access (taking into account geographic location: and reasonable travel time) to Medicaid services of adequate quality, including emergency services.

42 C.F.R. § 431.54(f).

Notably, such regulation is placed among the exceptions to the freedom of choice provision, *see id.* § 431.54 ("Exceptions to certain State plan requirements"), rather than those setting forth the procedural safeguards that must be followed when states exclude providers from state health care programs. *See id.* §§ 1002.1-.230 ("State-Initiated Exclusions from Medicaid"). Yet reading this provision in isolation, Guzman argues that it vests him with a right to the remedies set forth in the regulation prior to the enforcement of his temporary suspension.

Guzman is correct that his temporary suspension from Medi-Cal is a "restriction" on his participation in such program because the effect of the suspension is to prevent him

from billing Medi-Cal for the costs of any services rendered. *See supra* at 13361-62 & n.3. Moreover, DHCS has never made any finding that Guzman has furnished unnecessary or inadequate medical services, as section 431.54(f)(2) appears to require in order for a state to avoid infringing upon the freedom of Medicaid recipients to choose among providers.

**[9]** Yet even if subsection (f) were designed to entitle Guzman to the remedies it describes, Guzman must demonstrate that a federal *statute* vests him with such a right. As we held in *Save Our Valley*, "agency regulations cannot independently create rights enforceable through § 1983." 335 F.3d at 939; *see also Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."); *Gonzaga*, 536 U.S. at 290 ("[I]f Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms . . . .").

In determining whether Congress intended to create a federal right in a particular statutory provision, we examine three factors. "First, Congress must have intended that the provision in question benefit the plaintiff." *Blessing*, 520 U.S. at 340. In answering this initial inquiry, we must determine whether the statute creates an "*individual* entitlement," *Gonzaga*, 536 U.S. at 287, that is "unambiguously conferred," *id.* at 283 (internal quotation marks omitted), by the use of "rights-creating language," *id.* at 284 n.3. *See Harris v. Olszewski*, 442 F.3d 456, 461 (6th Cir. 2006) (applying *Gonzaga* to this prong of the *Blessing* test).

**[10]** Here, our analysis need not proceed further than this first step of the *Blessing* test because there is no federal statute that references any of the procedures set forth in subsection (f).[9] Although subsection (f) was promulgated to

---

[9]The second factor of the test asks whether "the right asserted protected by the statute is not so vague and amorphous that its enforcement

implement the exceptions to the freedom of choice provision set forth in the Omnibus Budget Reconciliation Act of 1981, including the provider "lock-out" exception, 42 U.S.C. § 1396n(a)(2)(B) (repealed 1987), Congress decided to repeal such provision in 1987. *See* Medicare and Medicaid Patient and Program Protection Act of 1987, Pub. L. No. 100-93, sec. 8(h), § 1915(a)(2), 101 Stat. 680, 694. Thus, whatever the effect of HHS's decision to retain the implementing regulation after the repeal of the statute, Guzman cannot contend that such regulation entitles him to a right enforceable in the § 1983 claim he has brought here.

As we have stated in the past, "the Supreme Court's *Sandoval* and *Gonzaga* decisions, taken together, compel the conclusion . . . that agency regulations cannot independently create rights enforceable through § 1983." *Save Our Valley*, 335 F.3d at 939. Such conclusion "should surprise no one, as it results directly from the broader, venerated constitutional law principle that Congress, rather than the executive, is the lawmaker in our democracy." *Id.*

**[11]** Accordingly, Guzman is unlikely to succeed on the merits of his claim that he has an enforceable federal right to a hearing prior to the imposition of his temporary suspension from the Medi-Cal program.

V

**[12]** Finally, Guzman argues that even if he is not entitled to a pre-suspension hearing under federal Medicaid law, the Fourteenth Amendment of the United States Constitution affords him such a remedy. The Fourteenth Amendment protects against governmental deprivations of "life, liberty, or

---

would strain judicial competence." *Blessing*, 520 U.S. at 340-41 (internal quotation marks omitted). The final factor asks whether the statute "unambiguously impose[s] a binding obligation on the States." *Id.* at 341.

property" without due process of law. U.S. Const. amend. XIV. To state a cognizable due process claim, Guzman must have a "recognized liberty or property interest at stake." *Schroeder v. McDonald*, 55 F.3d 454, 462 (9th Cir. 1995). We have previously held that a provider such as Guzman does "not possess a property interest in continued participation in Medicare, Medicaid, or the federally-funded state health care programs." *Erickson v. United States ex rel. Dep't of Health & Human Servs.*, 67 F.3d 858, 862 (9th Cir. 1995). Thus, under our precedent, Guzman must demonstrate that he possesses a liberty interest that will be jeopardized by his temporary suspension from Medi-Cal.

**[13]** The liberty guaranteed by the Fourteenth Amendment is necessarily broad. *See Bd. of Regents v. Roth*, 408 U.S. 564, 572 (1972). To that end, Guzman argues that DHCS's failure to provide him with a pre-suspension hearing deprived him of three protected liberty interests: (1) his right to contract with the state; (2) his interest in pursuing the occupation of his choice; and (3) his reputation for honesty and morality. Although all three interests are protected under the Fourteenth Amendment, Guzman must first demonstrate that he was actually deprived of at least one of these interests before he can establish that he is entitled to relief. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

A

**[14]** Guzman argues that because his temporary suspension denies him the ability to receive reimbursement for treating Medi-Cal patients, he has been deprived of his right to contract with the state. In support of such assertion, Guzman relies on the D.C. Circuit's decision in *Trifax Corp. v. District of Columbia*, 314 F.3d 641 (D.C. Cir. 2003), which indicates that "formally debarring a corporation from government contract bidding constitutes a deprivation of liberty that triggers the procedural guarantees of the Due Process Clause." *Id.* at 643. However, Guzman's reliance on such authority is mis-

placed. Participation in the Medi-Cal program entitles Guzman to reimbursement for treating patients who receive Medi-Cal benefits; it does not involve bidding on government contracts.[10] As the Seventh Circuit explained in *Medley v. City of Milwaukee*, 969 F.2d 312 (7th Cir. 1992), there is no authority for the proposition that a private party, such as Guzman, has a "liberty interest in . . . participation in a government assistance program designed to provide benefits for a third party." *Id.* at 317. Accordingly, we must conclude that DHCS's action does not deprive Guzman of his interest in contracting with the state.

B

Guzman next argues that his temporary suspension denies him his liberty interest in pursuing the occupation of his choice. The Supreme Court has not defined the boundaries of an individual's right to pursue his chosen profession, but it has stated that there is "some generalized due process right to choose one's field of private employment." *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999). The Court has emphasized, however, that all cases recognizing such a right have "deal[t] with a *complete prohibition* on the right to engage in a calling, and not [a] sort of brief interruption." *Id.* at 292 (emphasis added). Indeed, the liberty interest in pursuing one's chosen profession has been recognized only in cases where (1) a plaintiff challenges the rationality of government regulations on entry into a particular profession, *see, e.g.*, *Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232 (1957), or (2) a state seeks permanently to bar an individual from public employment, *see, e.g.*, *Roth*, 408 U.S. at 573.

**[15]** Guzman's claim does not fall into either of these two recognized categories. With respect to the first, DHCS has temporarily suspended Guzman from Medi-Cal, thereby pre-

---

[10]Accordingly, we need not determine whether to incorporate *Trifax*'s holding into our jurisprudence.

venting him from receiving reimbursement for treating Medi-Cal patients. DHCS has not, however, revoked or suspended his license to practice medicine. Thus, Guzman's case is distinguishable from those in which plaintiffs have challenged the rationality of a state-imposed barrier to entering a particular profession, such as a testing or licensing requirement. *See, e.g.*, *Schware*, 353 U.S. at 247 (recognizing the liberty interest of an individual denied the right to sit for a state bar exam).

**[16]** As to the second category, Guzman is not a public employee, nor has DHCS's decision to suspend him deprived him of future public employment. Consequently, the suspension did not impose a complete bar on his ability to become a public employee. *See Cafeteria & Rest. Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895-96 (1961) (concluding that an employment decision to bar a cook from working at a particular military base did not violate the cook's due process rights because she "remained entirely free to obtain employment . . . with any other employer"); *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1126, 1128 (9th Cir. 2001) (concluding that a janitor fired from his job and "barred from all future employment with the District" was not deprived of his liberty interest in pursuing the occupation of his choice because he had "not been banned from pursuing a janitorial position [or other public employment] elsewhere").

**[17]** In sum, Guzman's temporary suspension from the Medi-Cal program does not exclude him from the medical profession, nor does it deprive him of, or prevent him from applying for, public employment. Accordingly, Guzman has not been deprived of a protected liberty interest in pursuing the occupation of his choice.

## C

Finally, Guzman contends that the Due Process Clause entitles him to a pre-suspension hearing because the grounds on which the suspension is based harm his reputation. A per-

son's liberty interest is implicated if the government levels a charge against him that "impairs his reputation for honesty or morality." *Erickson*, 67 F.3d at 862 (citing *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 777 (9th Cir. 1982)). DHCS's suspension of Guzman triggers such an interest because it is predicated on the fact that he is under investigation for "fraud and abuse," an allegation that impacts his reputation for honesty. *See Cox v. Roskelley*, 359 F.3d 1105, 1113 (9th Cir. 2004) (concluding that a termination letter which alleged that a plaintiff had overcharged for services rendered "could impair [plaintiff's] reputation for honesty or morality").

Thus, Guzman can establish that he has a protected liberty interest at stake if he can satisfy the test we set forth in *Vanelli*: he must demonstrate that (1) " 'the accuracy of the charge is contested,' " (2) " 'there is some public disclosure of the charge,' " and (3) the charge is " 'made in connection with the termination of employment or the alteration of some right or status recognized by [ ] law.' " *Erickson*, 67 F.3d at 862 (alteration in original) (quoting *Vanelli,* 667 F.2d at 777-78).

**[18]** Applying *Vanelli*, we note initially that Guzman contests the accuracy of the charges against him. Ultimately, however, Guzman's likelihood of success on the merits of this claim turns on whether he can demonstrate a "public disclosure" of DHCS's charges against him under the second prong of the *Vanelli* test.

1

With respect to this second prong, Guzman first argues that federal regulations require DHCS to report his suspension to the Healthcare Integrity and Protection Data Bank ("HIPDB"), and that such reporting would constitute "public disclosure" sufficient to deprive him of a protected liberty interest. The HIPDB is a public database, maintained by HHS

under authority provided by the Social Security Act, which records certain "final adverse actions" taken against health care providers. *See* 42 U.S.C. § 1320a-7e(a). Information in this database is available on request to federal and state government agencies, health plans, health care practitioners and providers, and persons requesting statistical information. *See* 45 C.F.R. § 61.12(a). Because members of the public can access information in the HIPDB, DHCS's reporting of Guzman's suspension to the HIPDB would constitute publication that deprives him of a protected liberty interest. *See Cox*, 359 F.3d at 1108-12 (concluding that a termination letter, which set forth allegations of a public employee's incompetent and unethical behavior, was "published" the moment it was placed in the employee's publicly accessible personnel file).

Federal regulations provide that "Federal and State Government agencies *must* report health care providers, suppliers, or practitioners excluded from participating in Federal or State health care programs" for inclusion in the HIPDB. 45 C.F.R. § 61.10(a) (emphasis added). In addition, "exclusion" is defined for reporting purposes as "a temporary or permanent debarment of an individual or entity from participation in any Federal or State health-related program." *Id.* § 61.3. The report to the HIPDB must include, among other things, "[a] narrative description of the acts . . . upon which the reported action was based." *Id.* § 61.10(b)(4)(i).

Guzman argues that his temporary suspension is an "exclusion," which DHCS must report to the HIPDB, thereby publishing its charges against him. In response, DHCS contends that its policy is to report only "final" actions to the HIPDB. DHCS believes that the temporary suspension it imposed on Guzman under California Welfare and Institutions Code section 14043.36(a) is not a "final action" and thus need not be reported.[11]

---

[11]We deny DHCS's motion requesting that we take judicial notice of a letter from the Chief Counsel of the Office of Inspector General ("OIG"),

**[19]** The district court agreed with Guzman that DHCS's policy of not reporting temporary suspensions appears to conflict with the plain language of the regulations. *See* 45 C.F.R. §§ 61.3, 61.10. Nevertheless, the court concluded that because DHCS has an established policy of not reporting such suspensions, Guzman's fear of disclosure was merely speculative. As the district court explained,

> Guzman concedes that, as a matter of policy, DH[C]S does not report temporary suspensions to the HIPDB. He fears, however, that because that policy apparently violates federal regulations, DH[C]S may ultimately be forced to report the suspension. Guzman adduces no evidence that there will likely be a change in DH[C]S's policy during the pendency of this litigation. Specifically, he presents no evidence that the policy has been challenged by federal Medicaid authorities or third parties, or that DH[C]S for some other reason will not continue to adhere to it for the foreseeable future.

> Absent such evidence, Guzman's speculative, unsupported fear that the charges will be reported does not provide a sufficient basis upon which to conclude that he is likely to succeed on the merits of his procedural due process claim.

After DHCS stipulated that it would comply with such an order, the district court directed DHCS to provide Guzman with at least ten days' notice of any change in its reporting

---

to DHCS that explains how OIG defines final adverse actions for HIPDB reporting purposes. Judicial notice may be taken of any fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Whatever OIG's *stated* policy may be, one may reasonably dispute whether the OIG's description of the policy is consistent with the manner in which it is applied. Accordingly, we decline to take judicial notice of such document.

policy. This order remains in effect until the administrative hearing on DHCS's charges against Guzman is concluded and, if notice is given prior to or during such hearing, the district court's order provides that Guzman may renew his motion for a preliminary injunction.

[20] We cannot conclude that the district court abused its discretion in the treatment of this claim. The record establishes that DHCS has not reported Guzman's suspension to the HIPDB, and Guzman offers no evidence that DHCS is likely to change its policy in the future. Moreover, DHCS has been ordered to notify Guzman of any change in its policy, at which time Guzman could renew his motion for a preliminary injunction.

[21] Accordingly, based on the present record, we conclude that Guzman is not likely to succeed in proving that DHCS will publicly disclose the charges against him.

2

[22] In the alternative, Guzman also asserts that he is under contractual obligations with several independent physicians' associations to disclose his temporary suspension and that he is required to report the suspension to most of the hospitals at which he has staff privileges. Guzman's argument that his own disclosure of the suspension deprives him of a protected liberty interest is foreclosed by our decision in *Llamas*. In that case, we rejected the claim of a terminated public employee that his liberty interest would be implicated if he responded truthfully regarding such termination on a civil service job application he planned to file in the future. 238 F.3d at 1125-30. We explained that "to allow the potentially stigmatized party to satisfy the publication prong by disseminating the details surrounding his termination would contradict the purposes of the publication requirement as made clear in . . . Supreme Court precedent." *Id.* at 1131 (citing *Bishop v. Wood*, 326 U.S. 341, 349 (1976)).

**[23]** Guzman points to no authority for the proposition that the contracts that obligate him to self-report his suspension are sufficient to constitute public disclosure for purposes of a due process claim, and we are aware of none.[12] Accordingly, we conclude that Guzman's private obligations to report DHCS's action do not satisfy the public disclosure prong of the *Vanelli* test.

**[24]** Having determined that Guzman is unable to demonstrate that the nature of the charges against him will be publically disclosed, we need not consider whether the charges have been made in connection with the alteration of a protected right or status.[13] *See Erickson*, 67 F.3d at 862. Accordingly, we conclude that Guzman is unlikely to succeed in establishing a violation of his rights under the Fourteenth Amendment.

## VI

For the foregoing reasons, the district court's decision is **AFFIRMED.**

---

[12]Guzman cites *Merritt v. Mackey*, 827 F.2d 1368 (9th Cir. 1987), for the proposition that liability may exist where the state actor indirectly causes a private party to deprive another private party of a protected interest. In *Merritt*, we held that an employee of a nonprofit drug and alcohol rehabilitation center stated a claim under § 1983 that he was deprived of his property interest in continued employment when state and federal agents intentionally coerced the nonprofit to fire him by conditioning further funding on his termination. *Id.* at 1371. Such circumstances are not present here, however, as DHCS played no role in Guzman's decision to enter the private contracts that require reporting.

[13]In *Erickson*, we held that health care providers' exclusion from Medicare, Medicaid, and certain federally funded health care programs by the Secretary of HHS on account of their fraud-related *convictions* altered their legal "status" as program participants and consequently deprived them of a protected liberty interest. 67 F.3d at 863. We do not address whether *Erickson* should be extended to address situations, such as Guzman's, where a party has been suspended during the pendency of an investigation.