NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

APR 5 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RAUL MOLINA DEOCAMPO,<br><br>Petitioner,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General,<br><br>Respondent. | No. 16-72298<br>19-70091<br><br>Agency No. A031-252-889<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 7, 2018[**]
Seattle, Washington

Before: McKEOWN and FRIEDLAND, Circuit Judges, and BOLTON,[***] District
Judge.

Petitioner Raul Molina Deocampo ("Petitioner") is a native and citizen of

the Philippines. He petitions for review of a Board of Immigration Appeals

---

[*]       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]       The panel unanimously concludes this case is suitable for decision
without oral argument.  See Fed. R. App. P. 34(a)(2).

[***]       The Honorable Susan R. Bolton, United States District Judge for the
District of Arizona, sitting by designation.

("BIA") decision affirming an Immigration Judge's ("IJ") decision finding

Petitioner removable as charged and denying Petitioner's applications for asylum

and withholding of removal.[1]  *See* 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3); 8

C.F.R. § 1208.16.

Insofar as the BIA adopts the IJ's decision as its own, we review both

decisions.[2]  *Ahir v. Mukasey*, 527 F.3d 912, 916 (9th Cir. 2008).  We review de

novo the BIA's determination of purely legal questions regarding the

INA, deferring to the BIA's interpretation unless contrary to the statute's plain and

sensible meaning.  *See Kankamalage v. INS*, 335 F.3d 858, 861–62 (9th Cir. 2003).

We review de novo claims of due process violations in immigration proceedings.

*Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004).  Factual findings are

reviewed for substantial evidence.  *Zehatye v. Gonzales*, 453 F.3d 1182, 1184–85

(9th Cir. 2006).

I.     **Removability**

---

[1] The IJ concluded that Petitioner's Convention Against Torture ("CAT") claim was without merit.  Petitioner did not contest this finding on appeal to the BIA or in his opening brief. We do not consider it here.  *See Guzman v. Shewry*, 552 F.3d 941, 947 n.5 (9th Cir. 2009). The IJ found Petitioner ineligible for cancellation of removal.  *See* 8 U.S.C. § 1229b(a)(1).  Petitioner did not contest this finding in his opening brief, and we do not consider it here.  *See Guzman*, 552 F.3d at 947 n.5. Finally, the BIA rejected Petitioner's argument that he has a right to seek post-conviction relief.  Petitioner did not contest this finding in his opening brief, and we do not consider it here.

[2] We refer to the BIA and the IJ collectively as "the agency."

On or about December 29, 2014, Petitioner was convicted of Misconduct Involving a Controlled Substance in the Fourth Degree, which criminalizes possession of any amount of a schedule IA or IIA controlled substance. *See* Alaska Stat. § 11.71.040(a)(3)(A) (2012). The Department of Homeland Security ("DHS") charged Petitioner as removable under 8 U.S.C. § 1227(a)(2)(B)(i), which provides that

> any alien who "at any time after admission" has "been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. 802), other than a single offense involving possession for one's own use of 30 grams or less of marijuana" can be subject to removal.

The substance underlying a state law conviction must also be contained in the Federal schedules of the Controlled Substances Act ("CSA"). *See Cheuk Fung S-Yong v. Holder*, 600 F.3d 1028, 1034 (9th Cir. 2010).

Petitioner makes three arguments challenging his removability: (1) that Alaska Stat. § 11.71.040(a)(3)(A) is not a categorical match to a crime involving a controlled substance under the CSA; (2) that an individual could be convicted under Alaska Stat. § 11.71.040(a)(3)(A) for use, possession, or transportation of peyote for a ceremonial purpose, or for possession of a substance considered a controlled substance analog under Alaska law that would not be prohibited under federal law; and (3) that possession of the various controlled substances listed in the Alaska schedule are a "means" to commit a crime, and not an element of the

3

crime itself.  None is compelling.

First, instead of pointing to discrepancies between the Alaska and the Federal schedules, Petitioner argues that the IJ lacked the "technical knowledge" to determine whether the schedules are a categorical match.  The agency is only required to "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Lopez v. Ashcroft*, 366 F.3d 799, 807 n.6 (9th Cir. 2004) (quoting *Efe v. Ashcroft*, 293 F.3d 899, 908 (5th Cir. 2002)).  The agency more than satisfied this standard.[3]

Second, to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).  Petitioner makes no such showing here.

Third, the agency did not address whether Alaska Stat. § 11.71.040(a)(3)(A) lists disjunctive elements or different means of committing a single crime. Because the agency determined that all conduct criminalized by the state statute was

---

[3] The DHS demonstrated that nearly all of the substances listed in schedules IA and IIA of the Alaska Controlled Substances are easily found in the Federal schedules. Those substances not expressly listed in the Federal schedules are "controlled substance analogues," considered Schedule I controlled substances under the CSA. *See* 21 U.S.C. § 813.

covered by the CSA, its inquiry did not reach the issue of divisibility. Petitioner

has therefore failed to demonstrate an error in the agency's reasoning in

determining that the Alaska schedule was a categorical match. *See Safe Air for*

*Everyone v. U.S. E.P.A.*, 488 F.3d 1088, 1091 (9th Cir. 2007).

## II.     Asylum and Withholding of Removal

Substantial evidence supports the agency's conclusion that Petitioner has not

shown that he is a member of a cognizable social group. *Donchev v. Mukasey*, 553

F.3d 1206, 1213 (9th Cir. 2009). To define such a group, courts look to various

factors such as "immutability, cohesiveness, homogeneity, and visibility."

*Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1151 (9th Cir. 2010); *see also Matter of*

*M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014) (finding that membership in a

particular social group requires that the group be (1) composed of members who

share a common immutable characteristic, (2) defined with particularity, and (3)

socially distinct within the society in question). The agency correctly determined

that Petitioner's claim that he would be targeted based on his long-term residence

in the United States and perceived wealth did not indicate a particular social group

beyond "'returning Filipinos without family connections to the Philippines.'"

Petitioner's alleged social group lacks the requisite social visibility to make its

members readily identifiable as a discrete group within Filipino society. *See*

*Matter of A-M-E- & J-G-U-*, 24 I. & N. Dec. 69, 75 (BIA 2007) (finding that

5

"wealthy Guatemalans" did not constitute a particular social group because the group lacked sufficient social visibility).

Substantial evidence supports the agency's conclusion that Petitioner's application for withholding of removal be denied. Petitioner's inability to reach the standard governing asylum necessarily precludes his withholding of removal claim.[4]

## III. Due Process Claims

Petitioner argues that the agency committed two errors in violation of his procedural due process rights.[5] First, Petitioner argues that the IJ failed to resolve whether Petitioner derived citizenship through his parents or through his service in the armed forces. Second, Petitioner argues that the IJ failed to recognize "indicia of mental incompetence."

The IJ properly assessed Petitioner's citizenship status. Petitioner was over 18 on the date that the Child Citizenship Act of 2000 ("CCA") was passed, and because the CCA is not retroactive, Petitioner is ineligible for automatic citizenship. *See* 8 U.S.C. § 1431; *Matter of Rodriguez-Tejedor*, 23 I. & N. Dec.

---

[4] The "clear probability" standard governing withholding of removal is more rigorous than the "well-founded fear" standard governing asylum. *See Nahrvani v. Gonzales*, 399 F. 3d 1148, 1154 (9th Cir. 2005).

[5] "Aliens have a Fifth Amendment right to due process in deportation proceedings, which ensures that they receive a 'full and fair hearing.'" *Padilla-Martinez v. Holder*, 770 F.3d 825, 830 (9th Cir. 2014) (citation omitted).

6

153, 162 (BIA 2001). Under former 8 U.S.C. § 1432(a), Petitioner must establish that both of his parents naturalized before he turned 18, unless they were legally separated or one of the parents was deceased. *See* 8 U.S.C. § 1432(b) (Sec. 321(b) of the Immigration and Nationality Act of 1952, repealed by CCA of 2000). The DHS reported that Petitioner's father naturalized when Petitioner was 17, and Petitioner's mother naturalized when he was 22. Petitioner further testified that his parents divorced when he was approximately 30. The IJ properly determined Petitioner did not establish derivative U.S. citizenship.

Petitioner argues that he did not affirmatively know when his parents legally separated and the IJ should have granted Petitioner a continuance to seek relevant information. Yet the IJ did just that—investigating sua sponte Petitioner's citizenship status, recommending an immigration non-profit, and granting Petitioner multiple extensions to file applications for deportation relief. Petitioner's idea that the IJ has a duty to "inform an alien of 'apparent eligibility' for relief" exceeds the statutory requirements as we have interpreted them. *See* 8 C.F.R. § 1240.11(a)(2); *United States v. Lopez-Velasquez*, 629 F.3d 894, 896 (9th Cir. 2010).

Petitioner additionally argues that the agency "unfairly limited the Petitioner's ability to present his case and failed to fully develop the record" with respect to Petitioner's ability to naturalize. *See* 8 U.S.C. §§ 1439(b), 1440(b).

While Petitioner may have been eligible to naturalize on account of his service, because Petitioner never applied to do so, the agency was correct in finding that there was no further record to develop.

Finally, the IJ was not required to delve deeper into Petitioner's mental fitness. Notably, Petitioner never indicated that he suffered from mental illness. And Petitioner's minor lapses in memory and discrete instances of confusion, relative to the entire duration of the removal proceedings, do not imply fault in approaching Petitioner as mentally competent. *See Matter of Sinclitico*, 15 I. & N. Dec. 320, 321–23 (BIA 1975).

The petition for review is **DENIED**.